Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Ryan J. Regula (#028037)
Charlene A. Warner (#037169)
SNELL & WILMER L.L.P.
1 E. Washington St., Suite 2700
Phoenix, Arizona 85004
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: bwjohnson@swlaw.com
        cahler@swlaw.com
        rregula@swlaw.com
        cwarner@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Plaintiff Douglas A. Ducey,*
*Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas A. Ducey, Governor of the State of Arizona, in his official capacity, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Randy Moore, Chief of the United States Forest Service, in his official capacity; Camille Calimlim Touton, Commissioner of the United States Bureau of Reclamation, in her official capacity; Thomas J. Vilsack, United States Secretary of Agriculture, in his official capacity; United States Forest Service; and United States Bureau of Reclamation, | |
| Defendants. | |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Plaintiff Douglas A. Ducey ("Plaintiff"), for his Complaint against Randy Moore, Camille Calimlim Touton, Thomas J. Vilsack, the United States Forest Service, and the United States Bureau of Reclamation (collectively, "Defendants"), allege as follows:

**INTRODUCTION**

1.      An unprecedented crisis has arisen in the State of Arizona that is the creation of the federal government. Countless migrants are crossing unsecured areas of the border illegally. The result is a mix of drug, crime, and humanitarian issues the State has never experienced at such a significant magnitude, resulting in the State bearing the burden of the federal government's inaction. Arizona has pleaded with the federal government to act many times, but such pleas have been either ignored, dismissed, or unreasonably delayed. Rather than cooperate and work together with Arizona, the federal government has taken a bureaucratic and adversarial role.

2.      As a result, Governor Ducey took action to defend the State of Arizona and its citizens, under the inherent authority of the U.S. Constitution and his authority as Governor of Arizona, by directing that the gaps in the border wall be filled. Following that direction and subsequent action to secure Arizona's border and protect its citizens, the federal government has asserted that Arizona and Governor Ducey do not have the authority to take these protective actions. Thus, Governor Ducey files this lawsuit for the Court to determine important questions of law regarding jurisdiction over land within the State of Arizona and a state's interests in protecting itself. If these questions are unresolved, the federal government will continue to delay, infringe on the Governor's state of emergency powers, and endanger the lives and welfare of Arizona citizens and their property.

**PARTIES, JURISDICTION, AND VENUE**

3.      Plaintiff Ducey is the Governor of the State of Arizona. Under Arizona law, Governor Ducey is the official authorized to declare and respond to states of emergency within the State. *See* Ariz. Rev. Stat. § 26-303(D). Pursuant to this authority, Governor Ducey has declared a state of emergency due to the illegal influx of migrants across Arizona's southern border that has and continues to overwhelm private, local, and state

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

resources. Defendants' unlawful overreach by ordering a state agency to cease operations, which only Governor Ducey has lawful authority to direct under his emergency powers, regulates and injures Governor Ducey by substantially and immediately restricting his authority and discretion. In particular, Defendants are attempting to prevent Governor Ducey from enforcing Executive Order 2022-04, as he is entitled pursuant to A.R.S. § 26-303(E)(1) and (2), to protect the health and safety of Arizona citizens at the southern border and throughout the State.

4. Governor Ducey is injured further by Defendant United States Forest Service ("Forest Service") asserting that, in acting on his emergency powers to enforce Executive Order 2022-04, the Governor is subject to the federal regulatory approval process that governs Forest Service land use and occupancy. As stated below, Governor Ducey and the emergency powers provided to him by A.R.S. § 26-303(D) and (E) are not subject to any such federal regulations (including the federal Administrative Procedures Act) for the land in question here because, among other reasons: (a) the land is not federal; and (b) even if it was, the State—and Governor Ducey by virtue of his emergency powers—has concurrent jurisdiction. *See Sierra Club v. E.P.A.*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) ("In many if not most cases the petitioner's standing to seek review of administrative action is self-evident.")

5. In addition, standing has routinely been found in pre-enforcement situations involving the federal government, and those cases are applicable here. *See United Food & Com. Workers Int'l Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 428 (8th Cir. 1988) (holding that a plaintiff that would be injured by enforcement of a regulatory statute has standing to challenge that statute, regardless of whether enforcement threats have transpired); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 585–87 (7th Cir. 2011) (holding that regulated party had standing to bring pre-enforcement challenge to rule); *Brackeen v. Haaland*, 994 F.3d 249, 296 (5th Cir. 2021) ("If, as State Plaintiffs alleged, the Secretary promulgated a rule binding on states without the authority to do so, then State Plaintiffs have suffered a concrete injury to their

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

sovereign interest in controlling child custody proceedings that was caused by the Final Rule.").

6.      Additionally, Governor Ducey serves as the sole State official responsible for communications between the State of Arizona and the federal government. *See* Ariz. Rev. Stat. § 41-101(A)(4).

7.      Defendant Randy Moore is the Chief of the United States Forest Service and is named in his official capacity.

8.      Defendant Camille Calimlim Touton is the Commissioner of the U.S. Bureau of Reclamation and is named in her official capacity.

9.      Defendant Thomas J. Vilsack is the Secretary of Agriculture and is named in his official capacity. In this role, Secretary Vilsack oversees the Forest Service and Bureau of Reclamation and is responsible for enacting rules and regulations and establishing services that insure the objects of national forests—namely, to regulate their occupancy and use and preserve the forests from destruction. 16 U.S.C. § 551.

10.     Defendant Forest Service is a subdivision of the U.S. Department of Agriculture ("USDA"), an agency of the United States of America. The Forest Service is generally responsible for managing the United States' natural resources, including National Forest System lands, and claims jurisdiction over the land that is the subject of this litigation.

11.     Defendant U.S. Bureau of Reclamation ("BOR") is a subdivision of the Department of the Interior ("DOI"), an agency of the United States of America. BOR is responsible for reviewing and issuing use permits on Reclamation land, facilities, or waterbodies. *See* 43 C.F.R. § 429 *et seq*; Reclamation Manual LND 08-01 at 7 (Sept. 16, 2021).

12.     This Court has jurisdiction under 28 U.S.C. §§ 1331, and 2201-02.

13.     Venue in the District of Arizona is proper under 28 U.S.C. § 1391(e) because (a) a substantial part of the events and omissions giving rise to the claim occurred in this district—namely, the crisis at the Arizona southern border and issuance of Executive Order

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1    2022-04, and (b) a substantial part of property that is the subject of the action—the

2    Roosevelt Reservation—is situated in the district.

3                              **FACTUAL ALLEGATIONS**

4          14.    The citizens of Arizona are experiencing an unprecedented crisis at the State's

5    southern border, caused in large part by the federal government's complete abdication of

6    responsibility with respect to immigration and national security policy.

7          15.    In 2017, the United States government initiated construction of an effective

8    border wall between the United States and Mexico, including along the southern border of

9    Arizona. However, the federal government abandoned the effort in 2021, leaving states

10   without the means or support to continue construction.

11         16.    With construction halted, the abandonment of the project left numerous gaps

12   in the border wall that fail to provide a meaningful barrier across the State, making it

13   significantly easier for foreign nationals to cross illegally into Arizona. Indeed, the crisis at

14   the southern border is characterized by a massive, multifold influx of migrants, drugs, and

15   crime that only continues to increase alongside the federal government's neglect. The gaps

16   in the border wall have also created a humanitarian crisis within Arizona as migrants flood

17   through the border wall gaps and into Arizona's border towns, which quickly became

18   overwhelmed.

19         17.    In the federal government's own words, "[t]he last decades have yielded a

20   dramatic increase in encounters at the [southwest border]" in which "border encounters

21   more than doubled between 2017 and 2019, and— following a steep drop in the first months

22   of the COVID-19 pandemic—continued to increase at a similar pace in 2021 and 2022."

23   *Implementation of a Parole Process for Venezuelans*, 87 Fed. Reg. 63507 (October 19,

24   2022).

25         18.    The influx of migrants "has been particularly acute in certain border sectors"

26   in Texas and Arizona, "all of which are at risk of operating, or are currently operating, over

27   capacity." *Id.* In Fiscal Year ("FY") 2022, "the Del Rio, El Paso, and Yuma sectors

28   encountered almost double the number of migrants as compared to FY 2021 (an 87 percent

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

increase), and a ten-fold increase over the average for FY 2014 - FY 2019." *Id.*

19.     This increase in migration "has put a strain on domestic resources, which is felt most acutely by border communities." *Id.* Indeed, "local communities have reported strain on their ability to provide needed social services. Local officials and NGOs report that the temporary shelters that house migrants are quickly reaching capacity due to the high number of arrivals, and stakeholders in the border region have expressed concern that shelters will eventually reach full bed space capacity and not be able to host any new arrivals." *Id.*

20.     Further compounding the crisis, in 2021, the federal government also terminated the "Remain in Mexico" policy that protected Arizona border towns from floods of illegal border crossings.

21.     In addition to this unsustainable humanitarian crisis, the lackluster security at the border allows bad actors to exploit the crisis through drug and human trafficking and other crime.

22.     According to data from the United States Customs and Border Protection, the Tucson Sector recorded 169 events involving Fentanyl in just the first eight months of 2022, compared with just 14 events in all of 2019. This represents an 828% increase.

23.     The Tucson Sector has also seized 561 pounds of Fentanyl in the first eight months of 2022, which is more than 2019 through 2021 combined.

24.     According to data from the Federal Bureau of Investigation, Arizona has significantly outpaced the national average each year for violent crime offenses between 2011 and 2020. These offenses include homicide, rape, robbery, and aggravated assault.

25.     Moreover, the Tucson Sector has already recorded the highest number of weapon and ammunition seizure events in 2022 than in the previous four years.

26.     The county lines of Cochise County include part of Arizona's southern border. According to data from the eight largest law enforcement agencies in Cochise County—consisting of Benson, Bisbee, Douglas, Huachuca City, Sierra Vista, Tombstone, and Willcox Police Departments and the Cochise County Sheriff's Office—Cochise County

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

experienced a double-digit percentage rise (18%) in violent crime offenses between 2020 and 2021.

27.     In Huachuca City (which is located in Cochise County), reports of aggravated assaults in 2021 were at their highest level since 2011.

28.     In Sierra Vista (which is located in Cochise County), reports of violent crimes increased by over 20% between 2020 and 2021. In 2021, homicides in Sierra Vista were also at their highest level in ten years.

29.     According to the Cochise County Sheriff's Department, homicides in Cochise County are on the rise. In fact, more homicides were reported in the past two years than in the nine previous years combined.

30.     These statistics are just mere samples of the unprecedented wave of crime and drugs that plague Arizona communities, and especially the State's border towns, due to the unresolved border crisis.

31.     Due to the worsening conditions on Arizona's southern border and the crush of demand on private, local, and state resources, Governor Ducey was left with no choice but to step in for the federal government to protect the citizens of Arizona.

32.     Pursuant to his authority under A.R.S. § 26-303, on April 20, 2021, Governor Ducey declared a state of emergency designed to address the failed policies of the federal government that have encouraged foreign nationals and criminal organizations to take advantage of the conditions at the southern border.

33.     Consistent with that declaration, Governor Ducey deployed the Arizona National Guard to the Arizona southern border to assist border towns and local law enforcement with the crisis.

34.     However, despite their best efforts, simply increasing the number of personnel was not enough for these small border towns, who bore the brunt of the federal government's neglect.

35.     As the crisis became more unsustainable, on September 20, 2021, Governor Ducey and 25 other Governors requested a meeting with President Biden to collaborate on

1    solutions. No response to that request was ever received. [*See* Ex. 1, Joint Letter on the

2    Border.]

3        36.    The following month, a number of governors joined together and developed

4    a ten-point plan to address the border crisis. A response was not sent until more than six

5    weeks later on November 24, 2021, and it did not include a solution that involved securing

6    the border. [Ex. 2, Letter from DHS Secretary to Ducey.]

7        37.    Following continued pleas by government officials at the state and local

8    levels, in December 2021, DHS offered border towns a small glimmer of hope by

9    authorizing the U.S. Customs and Border Protection (CBP) to address life, safety,

10   environmental, and remediation requirements for border barrier projects located within the

11   Boarder Patrol's Yuma and Tucson Sectors.

12       38.    However, as of this filing, more than ten months later, the federal

13   government's empty promise has yet again gone unfulfilled, as construction on this project

14   has not begun.

15       39.    As crime and drugs continued to pour through gaps in the border wall,

16   Governor Ducey again exercised his authority by establishing the American Governors'

17   Border Strike Force with 25 other Governors. This initiative provided a mechanism for

18   collaboration with other state law enforcement agencies to target criminal activity by those

19   who exploit Arizona's border to expand their criminal enterprises.

20       40.    Even with these actions, the situation on Arizona's border continued to

21   overwhelm the resources within the state.

22       41.    Arizona communities could no longer wait for the federal government to

23   employ a solution.

24       42.    As part of a comprehensive strategy to address the ongoing crises, the Arizona

25   State Legislature authorized and appropriated almost $400 million for Fiscal Year 2023 to

26   fill the gaps in the border wall. The spending authority for this funding was effective on

27   July 1, 2022.

28       43.    Accordingly, on August 12, 2022, Governor Ducey issued Executive Order

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

2022-04 directing the Director of Emergency Management to immediately close the gaps in Arizona's southern border wall. [*See* Ex. 3, Executive Order 2022-04.]

44. Shortly after issuing the Executive Order, Governor Ducey authorized the Arizona Department of Emergency and Military Affairs ("DEMA") to use the funding appropriated by the legislature to employ a creative solution that involved closing the gaps in the border wall, which would relieve the criminal activity and humanitarian crisis that such gaps allow. Specifically, part of the plan involved double-stacking multi-ton shipping containers between the gaps in an effort to create a solid, sustainable barrier until the federal government erected a permanent solution.

45. Parts of this barrier at the border are located in a sixty-foot-wide swath of State land running parallel with the southern border known as the Roosevelt Reservation.

46. Upon information and belief, on May 27, 1907, President Theodore Roosevelt issued Proclamation 758, entitled "Setting Apart As Public Lands A Strip of Land On The Mexican Frontier." [*See* Ex. 4, Roosevelt Proclamation.] The Proclamation "reserved from entry, settlement or other form of appropriation under the public land laws and set apart as a reservation, all public lands within sixty feet of the international boundary between the United States and the Republic of Mexico, within the . . . Territor[y] of Arizona." [*Id.*]

47. This Proclamation did not cite any statutory authority upon which it relied. Instead, the Roosevelt Reservation cited only that it was "necessary for the public welfare," to reserve the above-described land from "the operation of public land laws and kept free from obstruction as a protection against the smuggling of goods between the United States and [the] Republic [of Mexico]." [*See id.*]; *see also* Ariz. Const. art. I, § 1.

48. The shipping containers have proven to be an effective temporary solution, as nearly 3,820 feet of previously open border near the overwhelmed community in Yuma is now closed. Indeed, John Modlin, chief of the Border Patrol's Tucson Sector, explained that closing these gaps is a helpful strategy because "[i]f Yuma has 10 gaps and people were crossing all 10 gaps, it's much more difficult for us to deal with than if Yuma has one or

two gaps and the majority of traffic is crossing through those gaps."[1]

49.     But rather than allowing Arizona to deal with the crisis the federal government created, the federal government has not only proven uncooperative, but has actually taken action to *block* the State from helping its own people.

50.     For example, on July 7, 2022, the Arizona State Land Department and Arizona Department of Agriculture requested approval from BOR "for the placement of fencing materials along the former Yuma Valley Railroad line area," to assist in keeping produce safe from contamination by following the protocols established to guard against another E. coli outbreak following the crippling contamination in 2018.

51.     On August 9, 2022, BOR responded, *inter alia*, that although it would "continue to work" with various agencies on "various border barrier and related projects to address and mitigate current gaps in the border barrier located on Reclamation lands which contribute to the increased migrant crossings," a "cultural report assessing the potential effect of the fence installation on federal lands and within the[] historic feature [of the Yuma Valley Railroad] will be required." *See Letter from United States Department of the Interior* (Aug. 9, 2022).

52.     Additionally, on September 16, 2022, DEMA notified Coronado National Forest personnel that it was seeking authorization to place barriers on National Forest land in all areas with gaps in the border wall.

53.     However, on October 7, 2022, the Forest Supervisor of the Coronado National Forest responded with a letter insisting that the Forest Service had not authorized the placement of any shipping containers and that the State would need to undergo a lengthy federal regulatory approval process before the State could proceed. [*See* Ex. 5, Letter from Coronado National Forest.] Upon information and belief, this regulatory approval process refers to BOR's permitting process discussed below. The letter also requested DEMA to "refrain from any further activity associated with the containers on NFS lands, including

---

[1] *See* https://www.fox10phoenix.com/news/migrants-at-arizona-border-unhindered-by-shipping-container-wall.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

the use of any equipment, until such time as a proper authorization is secured," which means DEMA cannot even remove the containers. [*Id.*]

54.    However, despite participating in some fruitless phone calls with the agency, no action was taken to address the State's concerns.

55.    Accordingly, on October 7, 2022, DEMA notified the Forest Service that it intended to close a 10-mile gap in Cochise County—which includes land within the Roosevelt Reservation—to ensure the safety of Arizona citizens and requested cooperation from the agency in achieving this vital goal. [Ex. 6, Letter from DEMA to the Forest Service.]

56.    After successfully repairing the border gaps in Yuma, DEMA initiated the process to add double-stacked shipping containers in the same manner to close the gap in Cochise County. However, upon information and belief, the Forest Service has threatened to arrest state employees working to close the border wall if they do not cease operations.

57.    Through their actions and statements, the Forest Service and BOR have made clear that they claim to exercise exclusive jurisdiction over the Roosevelt Reservation.

58.    However, even if the State were to submit to BOR's permitting process, there is no statutory processing time in which BOR must make a determination on an application for a use permit. *See* 43 C.F.R. § 429.13(b) ("The processing time depends upon the complexity of [the] requested use, issues associated with it, and the need for additional information from [the applicant].")

59.    Further, BOR will only approve an application if it determines that the requested use is appropriate and "not likely to interfere with [BOR's] project purposes or operations." *Id.* § 429.16. Because the "issuance of a use authorization is at Reclamation's discretion," *id.* § 429.15, BOR is not required to issue a use authorization and may approve or deny the application after reviewing the proposed use, based upon certain enumerated criteria. *See id.* § 429.14. BOR also does not have a mechanism for a state to request an emergency exemption to the process to address health, welfare, and safety exigencies for which the federal government refuses or is unable to address.

60.   If BOR issues an adverse decision, appealing the decision requires writing to the Director of the Office of Hearing and Appeals within 30 days from the date of mailing of the decision. *Id.* § 429.3(a), (b). However, to stay the Commissioner's decision pending appeal, it must be requested and granted. *Id.* § 429.3(c).

61.   Defendants' permitting process could take months, if not years, to resolve, even if the agency cooperates in good faith.

62.   The Forest Service has also indicated that it will require Governor Ducey to comply with the web of environmental reviews, which would inevitably create further delay and do not have emergency exceptions to address exigent state emergencies.

63.   Yet, upon information and belief, both agencies have previously issued waivers for construction of a border wall in these same areas, resulting in an arbitrary and capricious regulatory process.

64.   If Governor Ducey is unable to secure the border during this process, he will continue to experience substantial hardship in not being able to assert his lawful emergency authority, which will result in the humanitarian crisis continuing, border towns once again being overwhelmed, and more Arizona citizens falling victim to the violence and drugs that flow through the gaps.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment, 28 U.S.C. §§ 2201–02)**

**(Article II of the United States Constitution)**

65.   Governor Ducey incorporates and realleges the foregoing paragraphs as though set forth here in full.

66.   Article II of the United States Constitution allows the President to exercise the "executive Power." Article II, Section 2 of the United States Constitution delineates particular powers that the President shall have (*e.g.*, granting reprieves and pardons for offenses against the United States, making treaties with the advice and consent of the Senate, etc.).

67.   Although Governor Ducey fully understands the role as historically and

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

- 12 -

currently exercised by the President with respect to national security, Article II of the U.S. Constitution does not explicitly provide for the President to exercise his executive power to secure land or property without congressional approval. Even further, Article II of the U.S. Constitution does not allow the President to exercise his executive power for the benefit of "public welfare."

68. Accordingly, the Roosevelt Reservation was outside of President Roosevelt's authority to issue, and as such is unconstitutional as a matter of law and has no force or effect.

69. Therefore, the Forest Service's and BOR's claimed jurisdiction over the Roosevelt Reservation as federal land within the State of Arizona's borders conflicts with the State's sovereignty over that land and is *ultra vires*.

70. A live controversy exists that is ripe for determination and that would be redressable through equitable relief. Through their actions and statements, the Forest Service and BOR have made clear that they claim to exercise jurisdiction over the Roosevelt Reservation.

71. A judicial declaration with respect to the legal and jurisdictional status of the Roosevelt Reservation would not interfere with further administrative action, as no permit application is at issue and a decision would merely clarify whether Defendants can demand that Governor Ducey undergo its regulatory process. Further, Governor Ducey seeks to resolve purely legal questions that would not benefit from further factual development.

72. Governor Ducey also need not go through the administrative process because he is not challenging the denial of a permitting decision, but rather the legal status of the Roosevelt Reservation and the jurisdiction of the Forestry Service and BOR. *See Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *see also Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir.) (discussing D.C. Circuit cases that "reaffirm that review is ordinarily available when an agency exceeds its delegation of authority"), *cert. granted*, 141 S. Ct. 618 (2020), *and vacated and remanded sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

73. Governor Ducey seeks a declaration from this Court pursuant to 28 U.S.C.

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

§§ 2201–02, that the Roosevelt Reservation is unconstitutional as a matter of law and has no force or effect. Governor Ducey further seeks an injunction barring any federal governmental actors, including the Forest Service and BOR, from attempting to exercise jurisdiction over the Roosevelt Reservation in the State.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment in the alternative, 28 U.S.C. § 2201–02)

### (*Ultra Vires* Agency Action)

74.     Governor Ducey incorporates and realleges the foregoing paragraphs as though set forth here in full.

75.     Upon information and belief, DHS, DOI, and USDA entered into a Memorandum of Understanding on or about March 31, 2006 ("2006 MOU"). [*See* Ex. 7, MOU.] The 2006 MOU states that the "Parties acknowledge that CBP operation and construction within the sixty-foot 'Roosevelt Reservation' of May 27, 1907 (along the US-Mexico border) . . . is consistent with the purpose of those reservations and that any CBP activity (including, but not limited to, operations and construction) within the sixty-foot reservation[] is outside the oversight or control of Federal land managers." [*Id.*] The 2006 MOU also explicitly states that "DHS, through its constituent bureaus (including CBP), is statutorily mandated to control and guard the Nation's Borders and boundaries, including the entirety of the northern and southern land and water borders of the United States." [*Id.* at Section II.A.] By contrast, the 2006 MOU acknowledges that DOI and USDA "have responsibility for enforcing Federal laws relating to land management, resource protection, and other such functions on Federal lands under their jurisdiction." [*Id.* at Section III.B.] Upon information and belief, the 2006 MOU is still in effect among these federal entities.

76.     Upon information and belief, the Forest Service is an agency of USDA.  Upon information and belief, BOR is an agency of DOI. Accordingly, both the Forest Service and BOR are bound by the 2006 MOU among their respective federal departments.

77.     Furthermore, upon information and belief, DHS is the agency specifically designated for national security determinations. DHS has fifteen components, including

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

U.S. Citizenship and Immigration Services and CBP.  Because the Forest Service and BOR are not components of the fifteen enumerated DHS offices, they have no authority to make determinations that affect national security interests.

78.     As such, the Forest Service and BOR are aware, for these and other reasons, that they do not have jurisdiction over the Roosevelt Reservation.

79.     A live controversy exists that is ripe for determination and that would be redressable through equitable relief. Through their actions and statements, the Forest Service and BOR have made clear that they claim to exercise jurisdiction over the Roosevelt Reservation.

80.     Alleging in the alternative and therefore assuming that the Roosevelt Reservation is constitutional, the Forest Service's and BOR's expressed claims of jurisdiction over the Roosevelt Reservation conflict with their designated authority and are therefore *ultra vires*. *See e.g., Sierra Club*, 963 F.3d at 891; *Biden*, 142 S. Ct. 46 (2021).

81.     Accordingly, Governor Ducey seeks a declaration from this Court pursuant to 28 U.S.C. §§ 2201–02 that neither the Forest Service nor BOR have jurisdiction over the areas of the Roosevelt Reservation in the State over which they have respectively claimed jurisdiction.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment in the alternative, 28 U.S.C. § 2201–02)

### (Concurrent State Jurisdiction)

82.     Governor Ducey incorporates and realleges the foregoing paragraphs as though set forth here in full.

83.     A state generally has complete jurisdiction over the lands within its exterior boundaries.  *See Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2493 (2022) (citing U.S. Const. Amdt. 10). The Roosevelt Reservation is within the State's exterior boundaries.

84.     However, even assuming that the Roosevelt Reservation is constitutional (it is not), Governor Ducey alleges further that when Arizona was admitted to the Union, the United States did not retain exclusive jurisdiction over the Roosevelt Reservation. *See State*

- 15 -

*v. Galvan-Cardenas*, 165 Ariz. 399, 402 (1990). As such, the State and the federal government have concurrent jurisdiction over the Roosevelt Reservation.

85.     A live controversy exists that is ripe for determination and that would be redressable through legal and equitable relief.  Through their actions and statements, the Forest Service and BOR have made clear that they claim to exercise exclusive jurisdiction over the respective areas of the Roosevelt Reservation, to the exclusion of the State.

86.     Accordingly, Governor Ducey seeks a declaration from this Court pursuant to 28 U.S.C. §§ 2201–02 that the State has concurrent jurisdiction with the appropriate federal governmental entity over those parts of the Roosevelt Reservation located in the State.

## **FOURTH CLAIM FOR RELIEF**

### **(Declaratory Judgment, 28 U.S.C. §§ 2201–02)**

### **(Article I, Section 10 and Article IV, Section 4 of the United States Constitution)**

87.     Governor Ducey incorporates and realleges the foregoing paragraphs as though set forth here in full.

88.     Article IV, Section 4 of the United States Constitution requires that the U.S. "shall . . . protect each of the [States] against Invasion . . . ."

89.     Article I, Section 10 of the United States Constitution allows a State, when "actually invaded, or in such imminent Danger as will not admit of delay," to "lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War," without congressional authority.

90.     Governor Ducey's actions authorizing DEMA to close gaps in the border wall are a temporary response to the overwhelming emergency crises at the border. The crises place the State and its citizens in such imminent danger as will not allow delay, which is why Governor Ducey entered and seeks to enforce Executive Order 2022-04—to protect the health and safety of Arizona citizens at the southern border and throughout the State. Governor Ducey's actions authorizing DEMA to close gaps in the border wall also result

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1   from the federal government's failure to protect the State pursuant to the U.S. Constitution.

2   91.   However, based upon the subject federal agency action from the Forest

3   Service and BOR, the federal government has expressed an intent to prevent the State from

4   protecting itself subject to Article 1, Section 10 of the U.S. Constitution, while

5   simultaneously abdicating its duties under Article IV, Section 4 of the U.S. Constitution to

6   protect the State from the current emergency crises at the border.

7   92.   As such, a live controversy exists that is ripe for determination and that would

8   be redressable through legal and equitable relief. Accordingly, Governor Ducey seeks a

9   declaration from this Court pursuant to 28 U.S.C. §§ 2201–02 that the State has the

10   constitutional authority to take immediate temporary steps as described in Paragraphs 42-

11   45, *supra*, to stem the imminent danger of criminal and humanitarian crises related to the

12   Arizona border.

13   **FIFTH CLAIM FOR RELIEF**

14   **(Declaratory Judgment in the alternative, 28 U.S.C. §§ 2201–02)**

15   **(*Ultra Vires* Agency Action)**

16   93.   Governor Ducey incorporates and realleges the foregoing paragraphs as

17   though set forth here in full.

18   94.   The Forest Service has asserted that it requires the State to obtain a BOR use

19   permit pursuant to 43 C.F.R. § 429, *et seq.*

20   95.   A live controversy exists that is ripe for determination and that would be

21   redressable through equitable relief.  Through its actions and statements, Defendants have

22   made clear that they intend to exercise jurisdiction over the Roosevelt Reservation.

23   96.   Alleging in the alternative that the Roosevelt Reservation is unconstitutional,

24   but presuming that the Forest Service and BOR has jurisdiction over its asserted areas of

25   the Roosevelt Reservation, they at most possess an easement over the State's underlying

26   possession of the land subject to the Roosevelt Reservation. Accordingly, its attempt to

27   assert sole jurisdiction over the Roosevelt Reservation is outside its scope of authority and

28   is *ultra vires*.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

97.     Accordingly, Governor Ducey seeks a declaration (in the alternative) from this Court pursuant to 28 U.S.C. §§ 2201–02 that the Forest Service and BOR have only an easement over the areas of the Roosevelt Reservation in which they claim jurisdiction and that the land is appropriately State land.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment in the alternative, 28 U.S.C. §§ 2201–02)

### (Nuisance Action)

98.     Governor Ducey incorporates and realleges the foregoing paragraphs as though set forth here in full.

99.     As set forth above, the criminal and humanitarian crises related to Arizona's unsecured border harm the State, requiring the expenditure of State funds to address the health, welfare, and safety maintenance within the State's separate and concurrent jurisdiction.

100.    Governor Ducey has taken action when the federal government has failed, as further set forth above, to prevent the imminent danger from such crises and the further depletion of State resources.

101.    As such, a live controversy exists that is ripe for determination and that would be redressable through equitable relief.  Accordingly, Governor Ducey seeks a declaration from this Court pursuant to 28 U.S.C. §§ 2201–02 that the circumstances on Arizona's southern border present a public nuisance which the State is authorized to abate.

### PRAYER FOR RELIEF

Wherefore, Governor Ducey requests that this Court:

A.      Declare that the Roosevelt Reservation is unconstitutional as a matter of law and has no force or effect;

B.      Declare that the State has the constitutional authority to take immediate temporary steps as described in Paragraphs 42 through 45, *supra*, to stem the imminent danger of criminal and humanitarian crises related to the Arizona border;

Snell & Wilmer

L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

C. In the alternative, declare that neither the Forest Service nor BOR have jurisdiction over the areas of the Roosevelt Reservation in the State of Arizona over which the Forest Service and BOR have respectively claimed jurisdiction;

D. In the alternative, declare that the State of Arizona has concurrent jurisdiction with the appropriate federal governmental entity over those parts of the Roosevelt Reservation located in the State;

E. In the alternative, declare that the Forest Service and BOR have only an easement over the areas of the Roosevelt Reservation they claim jurisdiction and the land is appropriately State lands;

F. In the alternative, declare that the circumstances on Arizona's southern border present a public nuisance which the State is authorized to abate;

G. Permanently enjoin any federal governmental actors, including the Forest Service and BOR, from attempting to exercise exclusive jurisdiction over the Roosevelt Reservation in the State and allow the State to take appropriate actions, separately and in coordination with federal partners, to protect its citizens and their property;

H. Awarding Plaintiff the reasonable costs and expenses of this action, including attorneys' fees; and

I. Grant other such relief as may be just and proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

DATED this 21st day of October, 2022.

SNELL & WILMER L.L.P.


By: /s/ Brett W. Johnson
Brett W. Johnson
Colin P. Ahler
Ryan J. Regula
Charlene A. Warner
1 E. Washington St., Suite 2700
Phoenix, AZ 85004

Anni L. Foster
OFFICE OF ARIZONA GOVERNOR
DOUGLAS A. DUCEY
1700 West Washington Street
Phoenix, Arizona 85007

*Attorneys for Plaintiff Douglas A.*
*Ducey, Governor of the State of*
*Arizona*