# EXHIBIT 5

Allen Clark, Director
Arizona Division of Emergency Management
5636 E. McDowell Road Bldg. M5101
Phoenix, AZ 85008

Dear Mr. Clark:

As you know, on September 16, 2022, representatives from your office, the Arizona Department of Emergency Management (AZDEMA), emailed Coronado National Forest personnel seeking authorization "to place barriers on National Forest land in all areas that currently have gaps in the federal wall." While they did not identify the specific gaps that AZDEMA seeks to address, media reports indicate that the project may entail the placement of approximately 300 containers between 20 and 40 feet in length along an undisclosed extent of National Forest System (NFS) lands. Members of my staff and I communicated verbally over the last two weeks with you and other personnel from your office, advising of the federal regulatory approval process that governs NFS land use and occupancy and that prior approval would need to be obtained before the State could proceed. Your office was also encouraged to communicate its plans to the U.S. Department of Homeland Security.

On the afternoon of October 5, 2022, Forest Service personnel observed approximately 15 shipping containers and associated construction equipment at a staging area just north of the international border on NFS lands in Cochise County. As of October 6, 2022, at least 22 shipping containers, associated construction equipment, and private security personnel were located on the area. The Forest Service did not authorize this occupancy and use. It is my understanding that AZDEMA also intends to transport additional containers to the border and that it proposes to utilize existing roads to transport shipping containers to their intended destinations. Not only has the Forest Service not authorized the placement of any shipping containers on NFS lands, AZDEMA has not identified which roads will be used, how the proposed road use will impact NFS lands, or the extent to which excavation will be required to facilitate the placement of the containers.

As we discussed previously, the process for obtaining a permit is outlined in 36 C.F.R. 251.54. Please provide the requisite information required by this process at your earliest convenience to Adam Milnor, Recreation and Lands Staff Officer, Coronado National Forest, at adam.milnor@usda.gov. Upon receipt of the required information, the Forest Service will assess the information provided against initial screening criteria outlined in the regulations. If the proposal passes the applicable screening criteria, it will also have to be analyzed for effects on the environment in compliance with the National Environmental Policy Act and other federal law.

Meanwhile, please refrain from any further activity associated with the containers on NFS lands, including the use of any equipment, until such time as a proper authorization is secured. If you have any questions about how to comply with the special use authorization process, please reach out to me by email at kerwin.dewberry@usda.gov, or by phone at (520) 262-1652.

Sincerely,

KERWIN DEWBERRY
Digitally signed by KERWIN DEWBERRY
Date: 2022.10.07 19:44:35 -07'00'

Kerwin Dewberry
Forest Supervisor
Coronado National Forest

# EXHIBIT 6




**STATE OF ARIZONA**
**DEPARTMENT OF EMERGENCY AND MILITARY AFFAIRS**

5636 East McDowell Road
Phoenix, Arizona 85008-3495
(602) 267-2700  DSN: 853-2700

**Douglas A. Ducey**
GOVERNOR

**Maj Gen Kerry L. Muehlenbeck**
THE ADJUTANT GENERAL

NGAZ-TAG                                                                                      October 7, 2022

MEMORANDUM FOR NATIONAL FOREST SERVICE
(Mr. Kerwin Dueberry, National Forest Service Supervisor)

SUBJECT:  Arizona intent to continue with border wall construction

Dear Sir:

The Arizona Department of Emergency and Military Affairs, through our Division of Emergency Management, has attempted to work with your agency to address the issues on Arizona's southern border.  We are currently focusing on the western side of Cochise County where approximately 10 miles of border is wide open, with only a Normandy barrier to prevent criminals from leveraging Arizona's border for their criminal enterprises.

As outlined in the attached executive order from Governor Ducey, the lack of action by the federal government to secure Arizona's border continues to threaten the public safety of Arizona and its citizens. Cochise County Sheriff Mark Dannels has repeatedly pleaded with federal officials to act in his county so that citizens feel safe in their homes.

Although your agency has participated in some calls with Arizona officials, no action has been taken to address the state's concerns. Due to the lack of response and pursuant to the directive by Governor Ducey, work will commence to close the referenced gap to ensure the safety of Arizona citizens.  We continue to welcome cooperation and collaboration with our federal partners.

KERRY L. MUEHLENBECK
Major General, AZANG
The Adjutant General

Attachment:    Executive Order 2022-04, Securing Arizona's Borders

# EXHIBIT 7

**Memorandum of Understanding
Among
U. S. Department of Homeland Security
and
U. S. Department of the Interior
and
U. S. Department of Agriculture
Regarding
Cooperative National Security and Counterterrorism
Efforts on Federal Lands along the United States' Borders**

### I.     Purpose and Scope

A.  This Memorandum of Understanding (MOU) is made and entered into by the Department of Homeland Security (DHS), including and on behalf of its constituent bureau U.S. Customs and Border Protection (CBP) and the CBP Office of Border Patrol (CBP-BP); the Department of the Interior (DOI), including and on behalf of its constituent bureaus, the National Park Service (NPS), U.S. Fish and Wildlife Service (FWS), Bureau of Indian Affairs (BIA), Bureau of Land Management (BLM), and the Bureau of Reclamation (BOR); and the Department of Agriculture (USDA), including and on behalf of its constituent agency the U.S. Forest Service (USFS). Throughout this MOU, these three Departments, including their constituent agencies, may be referred to as "the Parties." Any reference to a bureau, agency, or constituent component of a Party shall not be deemed to exclude application to any appropriate bureau or constituent component of that Party. DHS recognizes that the BIA enters into this agreement only on its own behalf and not on behalf of any Indian tribe.

B.  The geographic and jurisdictional scope of this MOU is nationwide. The Parties recognize the national security and counterterrorism significance of preventing illegal entry into the United States by cross-border violators (CBVs), including but not limited to the following: drug and human smugglers and smuggling organizations, foreign nationals, and terrorists and terrorist organizations. The Parties further recognize that damage to DOI and USDA-managed lands and natural and cultural resources is often a significant consequence of such illegal entry. The Parties are committed to preventing illegal entry into the United States, protecting Federal lands and natural and cultural resources, and - where possible - preventing adverse impacts associated with illegal entry by CBVs.

C.  This MOU is intended to provide consistent goals, principles, and guidance related to border security, such as law enforcement operations; tactical infrastructure installation; utilization of roads; minimization and/or prevention of significant impact on or impairment of natural and cultural resources; implementation of the Wilderness Act, Endangered Species Act, and other related environmental law, regulation, and policy across land management agencies; and provide for coordination and sharing information

on threat assessments and other risks, plans for infrastructure and technology improvements on Federal lands, and operational and law enforcement staffing changes. This MOU provides guidance in the development of individual agreements, where appropriate, between CBP and land management agencies to further the provisions contained herein.

D. This MOU is entered into pursuant to the governing statutory authorities of each of the Parties.

E. The Parties acknowledge that CBP operation and construction within the sixty-foot "Roosevelt Reservation" of May 27, 1907 (along the US-Mexico border) and the sixty-foot "Taft Reservation" of May 3, 1912 (along the US-Canada border) is consistent with the purpose of those reservations and that any CBP activity (including, but not limited to, operations and construction) within the sixty-foot reservations is outside the oversight or control of Federal land managers.

F. This MOU supersedes any conflicting provision of any prior MOU or Memorandum of Agreement between the Parties or their subordinate bureaus or components.

## II.  Background

A. DHS, through its constituent bureaus (including CBP and its CBP-BP), is statutorily mandated to control and guard the Nation's borders and boundaries, including the entirety of the northern and southern land and water borders of the United States.

B. DOI and USDA, through their constituent bureaus, are statutorily charged as managers of Federal lands throughout the United States, including DOI and USDA lands in the vicinity of international borders that are administered as wilderness areas, conservation areas, national forests, wildlife refuges, units/irrigation projects of the Bureau of Reclamation, and/or units of the national park system. Tribal governments have primary management roles over tribal lands; however, the United States, through the BIA, may also have a stewardship or law enforcement responsibility over these lands. Many of these Federal and tribal lands contain natural and cultural resources that are being degraded by activities related to illegal cross-border movements.

C. The volume of CBVs can and has, in certain areas, overwhelmed the law enforcement and administrative resources of Federal land managers. In order to more effectively protect national security, respond to terrorist threats, safeguard human life, and stop the degradation of the natural and cultural resources on those lands, DOI and USDA land managers will work cooperatively with CBP to benefit from the enforcement presence, terrorist and CBV interdiction, and rescue operations of CBP.

### III. Common Findings and Affirmation of the Parties

A. The Parties to this MOU recognize that CBP-BP access to Federal lands can facilitate rescue of CBVs on Federal lands, protect those lands from environmental damage, have a role in protecting the wilderness and cultural values and wildlife resources of these lands, and is necessary for the security of the United States. Accordingly, the Parties understand that CBP-BP, consistent with applicable Federal laws and regulations, may access public lands and waterways, including access for purposes of tracking, surveillance, interdiction, establishment of observation points, and installation of remote detection systems.

B. The Parties recognize that DOI and USDA have responsibility for enforcing Federal laws relating to land management, resource protection, and other such functions on Federal lands under their jurisdiction.

### IV. Responsibilities and Terms of Agreement

A. The Parties Agree to the Following Common Goals, Policies, and Principles:

1. The Parties enter into this MOU in a cooperative spirit with the goals of securing the borders of the United States, addressing emergencies involving human health and safety, and preventing or minimizing environmental damage arising from CBV illegal entry on public lands;

2. The Parties will strive to both resolve conflicts at and delegate resolution authority to the lowest field operational level possible while applying the principles of this MOU in such manner as will be consistent with the spirit and intent of this MOU;

3. The Parties will develop and consistently utilize an efficient communication protocol respecting the chain of command for each of the Parties that will result in the consistent application of the goals, policies, and principles articulated in this MOU, and provide a mechanism that will, if necessary, facilitate the resolution of any conflicts among the Parties. If resolution of conflict does not occur at the local level, then the issue will be elevated first to the regional/sector office; if not resolved at the regional/sector level, then the issue will be elevated to the headquarters level for resolution;

4. The Parties will cooperate with each other to complete, in an expedited manner, all compliance that is required by applicable Federal laws not otherwise waived in furtherance of this MOU. If such activities are authorized by a local agreement as described in sub-article IV.B below, then the DOI, USDA, and CBP will complete the required compliance before executing the agreement;

5. The Parties will cooperate with each other to identify methods, routes, and locations for CBP-BP operations that will minimize impacts to natural, cultural, and wilderness resources resulting from CBP-BP operations while facilitating needed CBP-BP access;

6. The Parties will, as necessary, plan and conduct joint local law enforcement operations consistent with all Parties' legal authorities;

7. The Parties will establish a framework by which threat assessments and other intelligence information may be exchanged, including intelligence training to be conducted by all parties so that the intelligence requirements of each may be identified and facilitated;

8. The Parties will establish forums and meet as needed at the local, regional, and national levels to facilitate working relationships and communication between all Parties;

9. The Parties will develop and share joint operational strategies at the local, regional, and national levels, including joint requests for infrastructure and other shared areas of responsibility;

10. The Parties will share the cost of environmental and cultural awareness training unless otherwise agreed; and

11. The Parties will, as appropriate, enter into specific reimbursable agreements pursuant to the Economy Act, 31 U.S.C. §1535 when one party is to furnish materials or perform work or provide a service on behalf of another party.

B. <u>Responsibilities and Terms Specific to DOI and USDA</u>. The DOI and the USDA hereby recognize that, pursuant to applicable law, CBP-BP is authorized to access the Federal lands under DOI and USDA administrative jurisdiction, including areas designated by Congress as wilderness, recommended as wilderness, and/or wilderness study areas, and will do so in accordance with the following conditions and existing authorities:

1. CBP-BP agents on foot or on horseback may patrol, or pursue, or apprehend suspected CBVs off-road at any time on any Federal lands administered by the Parties;

2. CBP-BP may operate motor vehicles on existing public and administrative roads and/or trails and in areas previously designated by the land management agency for off-road vehicle use at any time, provided that such use is consistent with presently authorized public or administrative use. At CBP-BP's request, the DOI and the USDA will provide CBP-BP with keys, combinations, or other means necessary to

access secured administrative roads/trails. CBP-BP may drag existing public and administrative roads that are unpaved for the purpose of cutting sign, subject to compliance with conditions that are mutually agreed upon by the local Federal land manager and the CBP-BP Sector Chief. For purposes of this MOU, "existing public roads/trails" are those existing roads/trails, paved or unpaved, on which the land management agency allows members of the general public to operate motor vehicles, and "existing administrative roads/trails" are those existing roads/trails, paved or unpaved, on which the land management agency allows persons specially authorized by the agency, but not members of the general public, to operate motor vehicles;

3. CBP-BP may request, in writing, that the land management agency grant additional access to Federal lands (for example, to areas not previously designated by the land management agency for off-road use) administered by the DOI or the USDA for such purposes as routine patrols, non-emergency operational access, and establishment of temporary camps or other operational activities. The request will describe the specific lands and/or routes that the CBP-BP wishes to access and the specific means of access desired. After receiving a written request, the local Federal land manager will meet promptly with the CBP-BP Sector Chief to begin discussing the request and negotiating the terms and conditions of an agreement with the local land management agency that authorizes access to the extent permitted by the laws applicable to the particular Federal lands. In each agreement between CBP-BP and the local land management agency, the CBP-BP should be required to use the lowest impact mode of travel and operational setup reasonable and practicable to accomplish its mission. The CBP-BP should also be required to operate all motorized vehicles and temporary operational activities in such a manner as will minimize the adverse impacts on threatened or endangered species and on the resources and values of the particular Federal lands. However, at no time should officer safety be compromised when selecting the least impactful conveyance or operational activity. Recognizing the importance of this matter to the Nation's security, the CBP-BP Sector Chief and the local Federal land manager will devote to this endeavor the resources necessary to complete required compliance measures in order to execute the local agreement within ninety (90) days after the Federal land manager has received the written request for access. Nothing in this paragraph is intended to limit the exercise of applicable emergency authorities for access prior to the execution of the local agreement. The Secretaries of the Interior, Agriculture, and Homeland Security expect that, absent compelling justification, each local agreement will be executed within that time frame and provide the maximum amount of access requested by the CBP-BP and allowed by law;

4. Nothing in this MOU is intended to prevent CBP-BP agents from exercising existing exigent/emergency authorities to access lands, including authority to conduct motorized off-road pursuit of suspected CBVs at any time, including in areas designated or recommended as wilderness, or in wilderness study areas when, in their professional judgment based on articulated facts, there is a specific exigency/emergency involving human life, health, safety of persons within the area, or posing a threat to national security, and they conclude that such motorized off-road pursuit is reasonably expected to result in the apprehension of the suspected CBVs. Articulated facts include, but are not limited to, visual observation; information received from a remote sensor, video camera, scope, or other technological source; fresh "sign" or other physical indication; canine alert; or classified or unclassified intelligence. For each such motorized off-road pursuit, CBP-BP will use the least intrusive or damaging motorized vehicle readily available, without compromising agent or officer safety. In accordance with paragraph IV.C.4, as soon as practicable after each such motorized off-road pursuit, CBP-BP will provide the local Federal land manager with a brief report;

5. If motorized pursuits in wilderness areas, areas recommended for wilderness designation, wilderness study areas, or off-road in an area not designated for such use are causing significant impact on the resources, or if other significant issues warrant consultation, then the Federal land manager and the CBP-BP will immediately meet to resolve the issues subject to paragraphs IV.A.2 and IV.A.3 of this MOU;

6. CBP may request, in writing, that the land management agency authorize installation or construction of tactical infrastructure for detection of CBVs (including, but not limited to, observation points, remote video surveillance systems, motion sensors, vehicle barriers, fences, roads, and detection devices) on land under the local land management agency's administrative jurisdiction. In areas not designated as wilderness, the local Federal land manager will expeditiously authorize CBP to install such infrastructure subject to such terms and conditions that are mutually developed and articulated in the authorization issued by the land management agency. In areas designated or managed as wilderness, the local Federal land manager, in consultation with CBP, will promptly conduct a "minimum requirement," "minimum tool," or other appropriate analysis. If supported by such analysis, the local Federal land manager will expeditiously authorize CBP to install such infrastructure subject to such terms and conditions that are mutually developed and articulated in the authorization issued by the land management agency;

7. The DOI and USDA will provide CBP-BP agents with appropriate environmental and cultural awareness training formatted to meet CBP-BP operational constraints. The DOI and USDA will work with CBP-BP in the development and production of maps for use or reference by CBP-BP agents including, as appropriate, site-specific and resource-specific maps that will identify specific wildlife and environmentally or culturally sensitive areas;

8. The DOI and USDA will, as applicable, provide CBP-BP with all assessments and studies done by or on behalf of DOI or USDA on the effects of CBVs on Federal lands and native species to better analyze the value of preventative enforcement actions;

9. The DOI and USDA will assist CBP-BP in search and rescue operations on lands within the respective land managers' administration when requested;

10. The CBP-BP and land management agencies may cross-deputize or cross-designate their agents as law enforcement officers under each other agency's statutory authority. Such cross-deputation or cross-designation agreements entered into by the local land management agency and the field operations manager for the CBP-BP shall be pursuant to the policies and procedures of each agency; and

11. DOI and USDA will work at the field operations level with affected local CBP-BP stations to establish protocols for notifying CBP-BP agents when DOI or USDA law enforcement personnel are conducting law enforcement operations in an area where CBP-BP and DOI/USDA operations can or will overlap.

C. <u>Responsibilities and Terms Specific to the CBP</u>. DHS hereby agrees as follows:

1. Consistent with the Border Patrol Strategic Plan, CBP-BP will strive to interdict CBVs as close to the United States' international borders as is operationally practical, with the long-term goal of establishing operational control along the immediate borders;

2. If the CBP-BP drag any unpaved roads for the purpose of cutting sign under provision IV.B.2 above, then CBP-BP will maintain or repair such roads to the extent that they are damaged by CBP-BP's use or activities;

3. If CBP-BP agents pursue or apprehend suspected CBVs in wilderness areas or off-road in an area not designated for such use under

paragraph IV.B.5, then the CBP-BP will use the lowest impact mode of travel practicable to accomplish its mission and operate all motorized vehicles in such a manner as will minimize the adverse impacts on threatened or endangered species and on the resources and values of the particular Federal lands, provided officer safety is not compromised by the type of conveyance selected;

4. CBP-BP will notify the local Federal land manager of any motorized emergency pursuit, apprehension, or incursion in a wilderness area or off-road in an area not designated for such use as soon as is practicable. A verbal report is sufficient unless either CBP-BP or the land managing agency determines that significant impacts resulted, in which case a written report will be necessary;

5. If motorized pursuits in wilderness areas, areas recommended for wilderness designation, wilderness study areas, or off-road in an area not designated for such use are causing significant impact on the resources as determined by a land manager, or if other significant issues warrant consultation, then the CBP-BP and Federal land manager will immediately meet to resolve the issues subject to paragraphs IV.A.2 and IV.A.3 of this MOU;

6. CBP will consult with land managers to coordinate the placement and maintenance of tactical infrastructure, permanent and temporary video, seismic and other remote sensing sites in order to limit resource damage while maintaining operational efficiency;

7. CBP-BP will ensure that current and incoming CBP-BP agents attend environmental and cultural awareness training to be provided by the land management agencies;

8. CBP-BP will provide land management agencies with appropriate and relevant releasable statistics of monthly CBV apprehensions, search and rescue actions, casualties, vehicles seized, drug seizures and arrests, weapons seizures and arrests, and other significant statistics regarding occurrences on the lands managed by the land manager;

9. CBP-BP will consult with land managers in the development of CBP-BP's annual Operational-Requirements Based Budgeting Program to ensure affected land managers can provide input and are, in the early stages of planning, made aware what personnel, infrastructure, and technology the CBP-BP would like to deploy along the border within their area of operation; and

10. CBP-BP will work at the field operations manager level with affected local land management agencies to establish protocols for notifying

land management agency law enforcement officers when BP is conducting special operations or non-routine activities in a particular area.

## V.  Miscellaneous Provisions

A. Nothing in this MOU may be construed to obligate the agencies or the United States to any current or future expenditure of funds in advance of the availability of appropriations, nor does this MOU obligate the agencies or the United States to spend funds for any particular project or purpose, even if funds are available.

B. Nothing in this MOU will be construed as affecting the authority of the Parties in carrying out their statutory responsibilities.

C. This MOU may be modified or amended in writing upon consent of all Parties, and other affected Federal agencies may seek to become a Party to this MOU.

D. The Parties shall retain all applicable legal responsibility for their respective personnel working pursuant to this MOU with respect to, *inter alia*, pay, personnel benefits, injuries, accidents, losses, damages, and civil liability. This MOU is not intended to change in any way the individual employee status or the liability or responsibility of any Party under Federal law.

E. The Parties agree to participate in this MOU until its termination. Any Party wishing to terminate its participation in this MOU shall provide sixty (60) days written notice to all other Parties.

F. This document is an intra-governmental agreement among the Parties and does not create or confer any rights, privileges, or benefits upon any person, party, or entity. This MOU is not and shall not be construed as a rule or regulation.

In witness whereof, the Parties hereto have caused this Memorandum of Understanding to be executed and effective as of the date of the last signature below.

Date: 3/24/06              _____
                           Secretary of Homeland Security

Date: 3/31/06              _____
                           Secretary of the Interior

Date: 3/29/06              _____
                           Secretary of Agriculture

- 10 -