Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-464-0539
Email: mfink@biologicaldiversity.org
*Pro Hac Vice*

Attorney for Proposed Defendant-Intervenor

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas A. Ducey, Governor of Arizona, in his official capacity, | No. CV-22-1814-PHX-DGC |
| Plaintiff, | **CENTER FOR BIOLOGICAL DIVERSITY'S REPLY IN SUPPORT OF MOTION TO INTERVENE** |
| vs. | |
| Randy Moore, Chief of the United States Forest Service, in his official capacity, *et al.*, | |
| Defendants, | |
| and | |
| Center for Biological Diversity, | |
| Proposed Defendant-Intervenor. | |

**INTRODUCTION**

Plaintiff Governor Ducey of Arizona has filed a politically motivated lawsuit making extraordinary claims of state control and authority over the federal border lands between Arizona and Mexico. The Governor's opposition to the Center's intervention motion characterizes his suit as merely an abstract dispute between the state of Arizona and the federal government without any on-the-ground consequences. The Governor, however, is actively and recklessly installing thousands of shipping containers on miles of federal land at the border without permission from the federal government and in violation of federal law. The Governor seeks to sanction and continue these activities through this lawsuit, specifically to avoid the "web of environmental reviews" and other federal environmental protections. Doc. 1, ¶ 62. The Center for Biological Diversity, a national conservation organization headquartered in Tucson, Arizona, has a longstanding interest in the protection and recovery of endangered species that depend on the few remaining wildlife corridors between Arizona and Mexico, including the endangered jaguar, and in the environmentally responsible management of the border region. Doc. 7, ¶¶ 6-15. Because the Governor's lawsuit substantially threatens these undisputed and recognized interests, the Center seeks to intervene.

The Center has no intention of duplicating arguments made by the Governor or Federal Defendants concerning the underlying jurisdictional and Constitutional questions. The Center also has no interest in expanding the Governor's lawsuit or complicating the matter. Doc. 14, p. 2. Rather, the Center appropriately seeks intervention to ensure the full and proper consideration of the serious implications of this suit, including the Governor's requested relief, on the longstanding interests of the Center in federally endangered species and the southern border region. While the Governor is opposed to the Center's involvement, the Federal Defendants take no position on the Center's motion "other than to state that permissive intervention would appear to be the more appropriate avenue for intervention than intervention as of right." Doc. 16, p. 2.

**ARGUMENT**

To meet the familiar test for intervention, the Center must show that: (1) the motion is timely; (2) the Center has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) that without intervention, the disposition of the action may, as a practical matter, impair or impede the Center's ability to protect that interest; and (4) the existing parties may not adequately represent the Center's interests.  *See* Doc. 6, p. 7, citing *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  The Governor does not contest that the Center's motion is timely.  Doc. 14, p. 3, n. 1.  The Center satisfies the remaining three requirements and should be granted intervention.

**I.      The Center has a significant, protectable interest in endangered species that migrate between Arizona and Mexico, and in the condition of the environment at the southern border.**

The Center's motion explains the organization's significant interests at stake in this case.  Doc. 6, p. 9-11.  The Center has worked for decades to compel the required protections for federally endangered species including the jaguar and ocelot that depend on wildlife corridors that are free from barriers at Arizona's southern border.  *Id.*, p. 9-11.  The Center has similarly worked for many years to protect the overall health and condition of the environment at the southern border.  *Id.*, p. 11.  The Governor does not contest that the Center has these longstanding interests, or that these interests are significant and protectable.  The Governor instead argues that these interests are not directly related to the jurisdictional and Constitutional issues in this case.  Doc. 14, p. 4.

An applicant seeking to intervene, however, does not need to show that its interests are protected by the statute under which the litigation is brought.  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  The applicant only needs to show that the interests are protected by some law and that there is a relationship between the legally protected interest and the plaintiff's claims.  *Id.*  Here, the Center's interests are protected by the federal environmental laws and regulations that presently apply at

Arizona's southern border. The Governor's complaint and request for relief seek to abruptly end over a century of federal control and authority at the border, and thereby eliminate all of the federal environmental laws and regulations that protect the Center's interests. Thus, there is a clear relationship between the Center's legally protected interests and the Governor's claims and request for relief. *Id.*

**II.     The Center's interest in endangered species, and in the environment at the southern border lands, are threatened by the Governor's complaint and requested relief.**

The crux of the Governor's opposition to the Center's motion concerns the third factor, which is whether the Center's recognized interests in federal endangered species and the environment at the southern border lands are threatened by the Governor's lawsuit. The Governor claims that the Center's interests are "too speculative," "not pertinent" and "irrelevant" to its lawsuit. Doc. 14 at 4-6. The Governor's arguments again ignore the very purpose of its lawsuit, including its requested relief.

The Governor's opposition portrays this case as an academic exercise over who has authority and control over the lands at Arizona's southern border. However, the Governor explicitly filed this case to seek legal sanction for his ongoing efforts to construct a barrier at the border, without any permission, approvals, or environmental review by the federal government. This is clear both in the correspondence between the federal agencies and the state leading up to the lawsuit, and in the Governor's complaint itself. Prior to filing suit, the Governor sought authorization from the Forest Service to place barriers on National Forest lands, and was informed that he would need to first comply with the Forest Service's applicable regulations, as well as "the National Environmental Policy Act and other federal law." Doc. 1, Exhibit 5. The Bureau of Reclamation similarly informed the Governor that the unauthorized placement of barriers at the southern border would constitute "a violation of federal law" and "a trespass against the United States." Doc. 7-1 (Silver Declaration, Exhibit A).

The Governor's complaint seeks to abolish federal review, oversight, authority,

3

and approval over whatever actions he wishes to take at the southern border, and to thereby eliminate all federal laws and protections for endangered species and the environment. The Governor explicitly seeks to avoid federal environmental review for his border activities. Doc. 1, ¶ 62. The Governor further seeks an injunction "barring any federal government actors" from attempting to exercise jurisdiction over the border lands in Arizona. *Id*., ¶ 73. And the Governor requests that the federal government be permanently enjoined from exercising jurisdiction over the border lands, and the State allowed to take any actions "to protect its citizens and their property." *Id*., p. 19, ¶ G.

The Center's interests are highly relevant to the Governor's lawsuit and requested relief. Without this lawsuit, the law and record are clear that the Governor could not take his desired actions at the border unless and until he first complied with federal environmental laws and regulations. Doc. 1, Exhibit 5; Doc. 7-1. The Governor's shipping container proposal would be a proposed action that must comply with the Forest Service's applicable regulations, 36 C.F.R. § 251.54; the Land and Resource Management Plan for the Coronado National Forest, 16 U.S.C. § 1604(i); NEPA, 42 U.S.C. § 4332(2)(C); Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536, and Section 404 of the Clean Water Act, 33 U.S.C. § 1344. Through these requirements, the public (including the Center and its members) could be meaningfully involved in the process, and the expert federal agencies would review and ensure that the proposed activities meet all applicable requirements, and impose any necessary mitigation. If the proposal could not meet these requirements, it could not proceed.

If the Governor obtains the relief he seeks in this suit, the federal agencies would be enjoined from exercising authority over proposed activities at the southern border lands. The Governor would be allowed to "take appropriate actions" at the border without any federal environmental review or protections. Thus, for any activities the Governor seeks to conduct at the border, there would be no public notice and involvement, no environmental review under NEPA, and no consultation with the United

States Fish and Wildlife Service ("FWS") to ensure that the activities would not jeopardize any endangered species or adversely modify critical habitat.

Moreover, the Governor's claim that the Center's interests in this case are speculative wholly ignores that the Governor is already recklessly installing thousands of shipping containers at the border without the required federal environmental reviews, consultation, or permission.  The Governor's complaint admits that the state had already "initiated the process" of installing "double-stacked shipping containers" prior to filing suit.  Doc. 1, ¶ 56.  The Center documented ongoing installation of shipping containers at the border prior to filings its motion to intervene.  Doc. 8, ¶ 17.  And this installation has continued and remains ongoing.  These are facts, not speculation.  The remaining wildlife corridors are being closed, and the environment at the border destroyed, all without federal environmental review, compliance, consultation, or permission.






Supplemental Declaration of Russ McSpadden, ¶¶ 5, 8, 12.

5

The Governor argues that these federal environmental requirements "all flow from the federal government's authority," and thus only apply *if* the federal government has jurisdiction over these lands. Doc. 14, p. 5 (emphasis in original). This is exactly the Center's point and concern. The Governor is filing this suit specifically to rid himself of this "swath of nuanced environmental considerations" at the southern border. *Id*. If the Governor's suit is successful, and he obtains his requested relief, the Center's longstanding interests at the border will be substantially and forever impaired.

Remarkably, the Governor argues that the Center cannot prove that the installation of miles of shipping containers would have any impact on endangered species or the environment at the border. Doc. 14, p. 6. This is precisely why Congress enacted NEPA and Section 7 of the ESA, so that the state and federal agencies, Tribes, and concerned public understand the potential environmental consequences of such actions before they are approved and implemented. *Jamul Action Comm. v. Chaudhuri*, 837 F.3d 958, 961 (9th Cir. 2016) (NEPA ensures that environmental information is available to public officials and citizens before decisions are made and before actions are taken); *Ctr for Biological Diversity v. BLM*, 698 F.3d 1101, 1114 (9th Cir. 2012) (compliance with the ESA's procedural consultation requirement provides assurance there will be no violation of the ESA's substantive provisions). As explained, these activities are occurring in designated critical habitat for the jaguar, which FWS has determined is essential for the jaguar's conservation. Doc. 7, ¶¶ 9-13. There is no need to wait for a "train of subsequent events" (Doc. 14, p. 6), as the Governor is already installing a miles-long train of shipping containers at the border with no regard to federal environmental laws.

The Governor also claims that the Arizona Game and Fish Department will adequately protect the Center's interests if the Governor prevails in this case. Doc. 14, p. 6. Tellingly, the Governor cites to no state environmental review, laws, or requirements that would protect the Center's interests in endangered species and the environment at the border. Similarly, the Governor does not cite to any reviews, consultations, or approvals

that were provided by the Arizona Game and Fish Department prior to the Governor's ongoing installation of shipping containers at the border. In any event, there is simply no comparison between the substantive and procedural protections provided by the federal environmental laws such as NEPA and Section 7 of the ESA, and whatever state requirements may apply. Indeed, these mandatory federal environmental laws and requirements are the very reason for why the Governor has filed this case.

The Governor also argues that the Center's interests at issue in this case are "too general." Doc. 14, p. 6-7. The Governor is wrong, however, that the Center has not demonstrated any particularized interests in the endangered species and conditions at the border. *Id.*, p. 7. The Center provided a declaration from one of its founders who explains the Center's decades of work specific to endangered jaguars and ocelots in Arizona, including how the Governor's installation of shipping containers threatens the Center's interest in these species. Doc. 7, ¶¶ 8-13, 29. This Declaration further sets forth the Center's lawsuits challenging the construction of barriers at the border, and the staff time documenting the environmental impacts of border wall construction. *Id.*, ¶¶ 15, 30. And the Center's Declarations set forth concrete and specific harms to members of the Center that have already been caused by the ongoing installation of shipping containers, and which will continue if the Governor prevails in this case. *Id.*, ¶¶ 24-28; Doc. 8. This type of harm has been repeatedly recognized as sufficient to demonstrate standing, and is equally sufficient to support the Center's intervention. Doc. 6, p. 8, n. 2; *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 183 (2000) (environmental plaintiffs adequately allege injury when they aver that they use the affected area and that their use and enjoyment of the area would be lessened by the challenged activity).

The Governor further argues that his lawsuit will not really harm the Center because the federal environmental laws and requirements that protect the Center's interests were never supposed to apply at the southern border lands. Doc. 14, p. 7-8. This argument, of course, presupposes the outcome of this case. The fact remains that for

1 the over 30 years of the Center's existence, the organization's interests in endangered
2 species and the environment of the border region have been protected by federal
3 environmental laws and regulations. The Governor's lawsuit seeks to permanently
4 eliminate all of these federal environmental laws and protections. This would cause
5 substantial injury to the Center's longstanding interests in the border region.

6 Last, the Governor argues that the Center's interests concern only "potential"
7 impacts at the border, and that the installation of the shipping containers is only
8 "temporary." Doc. 14, p. 8. Again, the Governor is not waiting for the resolution of this
9 case prior to installing the shipping containers without any federal review or approval.
10 The impacts to endangered species and the environment are already occurring, and these
11 impacts will continue if the Governor prevails. Moreover, the environmental destruction
12 that has already been caused by the installation of the containers, and that will continue if
13 the Governor prevails, is not merely temporary. Trees have been cut, soils have been
14 damaged, and migration corridors have been blocked.[1] The courts have recognized that
15 environmental injury, by its very nature, is "often permanent," especially in the fragile
16 desert environment, and especially where there has been no prior environmental review.
17 *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ("[e]nvironmental
18 injury, by its nature, . . . is often permanent"); *Save Our Sonoran v. Flowers*, 408 F.3d
19 1113, 1124 (9th Cir. 2005) ("once the desert is disturbed, it can never be restored."); *S.*
20 *Fork Band Council of W. Shoshone v. U.S. Dept. of Interior*, 588 F.3d 718, 728 (9th Cir.
21 2009) ("[t]he likelihood of irreparable environmental injury without adequate study of the
22 adverse effects and possible mitigation is high."). And the Governor has made no

---

[1] *See e.g*, "The environmental consequences of Gov. Ducey's rogue 'border wall,'" by Caroline Tracey, High Country News, Nov. 15, 2022, https://www.hcn.org/articles/south-borderlands-the-environmental-consequences-of-gov-duceys-rogue-border-wall; *and* Doc. 7-1 (U.S. Bureau of Reclamation notifying the state that the unauthorized placement of shipping containers "is harming federal lands and resources").

commitment to ever removing these "temporary" barriers, which have been installed at considerable cost to the state. Doc. 1, ¶ 42 (asserting that the Arizona state legislature authorized almost $400 million for Fiscal Year 2023 to fill the gaps in the border wall.).

### III. The Center's interests are not adequately represented by existing parties.

"Rule 24(a)(2) promises intervention to those who bear an interest that may be practically impaired or impeded 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2203 (2022). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898, quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). Moreover, as explained in the Center's opening brief, the Supreme Court recently emphasized in *Berger* that it had earlier recognized in *Trbovich v. Mine Workers* that even when a private party requests to intervene in a case where it asserts "a related interest to that of an existing government party," there is no presumption of adequacy where the interests are not identical, but rather the movant's burden should still be treated as minimal. Doc. 6, p. 15; *Berger*, 142 S. Ct. at 2203-04, citing *Trbovich v. Mine Workers*, 404 U.S. 528, 538-39 (1972).[2]

As in *Trbovich*, the interests of the Center and the Federal Defendants may be related, but are not identical. While Defendants must juggle various interests in its relations with states and in managing the border, the Center is solely focused on ensuring that federal environmental laws remain in place and are enforced at the border. Moreover, the Center and federal government have repeatedly been on opposite sides of the courtroom concerning the Center's interests in the endangered jaguar and the environment of the border region. The Center was required to file multiple citizen suits under the ESA to compel the required listing, critical habitat designation, and recovery

---

[2] The Governor's attempt to distinguish *Berger* on the facts does not take away from the Court's discussion of *Trbovich*. Doc. 14, p. 9, n. 5.

plan for the jaguar. Doc. 6, p. 9-10. And the Center filed suit over the failure of the federal government to update its environmental analysis for its activities at the southern border, as required by NEPA. *Id*., p. 11. As explained in the Center's opening brief, the Ninth Circuit has recognized that an important factor in finding inadequacy of representation is where there is a history of adversarial proceedings between the proposed intervenor and the party upon which the proposed intervenor must rely. *Id*., p. 16.

Moreover, the Governor notified Federal Defendants as early as October 7, 2022 that he intended to install shipping containers on federal land at the southern border even without federal approval. Doc. 1, ¶ 55. By the time of the filing of his complaint on October 21, 2022, the Governor had "initiated the process to add double-stacked shipping containers" on the border. *Id*., ¶ 56. Other than notifying the Governor that he is violating federal law and trespassing (Doc. 7-1), Federal Defendants have taken no concrete steps to stop the Governor's illegal and ongoing installation of the barrier at the border. This course of action (or inaction) undermines any notion that Defendants can be counted on to adequately represent the Center's particular interests in this case.

**IV.     Alternatively, the Center should be granted permissive intervention.**

In arguing against permissive intervention, the Governor asserts that the Center has not "even attempted" to explain how its interests share any common questions of law or fact with the Governor's complaint. Doc. 14, p. 10. But again, the Center has relied for decades on the federal environmental laws and requirements that apply at the southern border to protect its longstanding interests in endangered species and the environment of the border region. The Governor seeks to permanently eliminate these federal laws and protections, and thereby substantially impair the Center's ability to protect these interests.

The Governor also claims that permitting the Center to intervene "would open a floodgate to immaterial factfinding." Doc. 14, p. 10. The Governor would clearly like to keep all environmental considerations of his reckless activities at the border under the rug, first by refusing to comply with the mandatory federal environmental review and

disclosure requirements, and now by narrowly limiting the Court's consideration to only the jurisdictional and Constitutional legal issues without any regard to the environmental consequences and equitable considerations of the Governor's requested relief.

Last, the Governor argues that "equitable factors counsel against permissive intervention." Doc. 14, p. 10-11. But the opposite is true. The Center has worked for decades to ensure that endangered jaguars can safely travel between Arizona and Mexico, and the Governor's complaint risks jeopardizing this decades of work by removing all federal protections at the border so that it may completely close off the border with no consideration of impacts to endangered species or other federal laws. Similarly, the Center has worked for many years to compel the federal government to comply with federal environmental laws concerning its border activities, and the Governor seeks to undo and render meaningless this work by permanently eliminating all federal laws and protections at the border. The Center unquestionably has significant interests that are seriously threatened by the Governor's lawsuit, and should be allowed to participate.

The Center has no intention of unduly complicating this case, delaying the proceedings, or injecting irrelevant issues. Doc. 14, p. 11. The Center will not repeat arguments made by Federal Defendants, and will of course comply with any restrictions placed on its participation by the Court. The Center has an important perspective that is unlikely to be addressed by the parties, and has considerable knowledge and experience with the environmental consequences of barriers at the border region at issue. The Center's involvement in the case will contribute to the public interest by helping to ensure the full and fair consideration of all relevant considerations and implications of the Governor's complaint and requested relief.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Center's opening brief, the Center has a right to intervene under Rule 24(a) as a defendant in this case. In the alternative, the Court should permit the Center to intervene pursuant to Rule 24(b).

Dated November 22, 2022.    Respectfully submitted,

*/s/ Marc D. Fink*
Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-464-0539
Email: mfink@biologicaldiversity.org
*Pro Hac Vice*

*Attorney for Proposed Defendant-Intervenor*